IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

STEPHANIE D. LOWERY                                          PLAINTIFF

v.                          Civil No. 10-2103

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                              DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Stephanie Lowery, brings this action under 42 U.S.C. § 405(g), seeking judicial

review of a decision of the Commissioner of Social Security Administration ("Commissioner")

denying her claim for a period of disability and disability income benefits ("DIB") under Title II

of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  In

this judicial review, the court must determine whether there is substantial evidence in the

administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

I.      **Procedural Background:**

The plaintiff filed her application for DIB on October 23, 2007, alleging an amended onset

date of July 11, 2007, due to bipolar disorder, carpal tunnel syndrome, panic attacks, depression,

neck problems, irritable bowel syndrome ("IBS"), migraine headaches, and kidney stones.  Tr.

106-113, 131, 138-139, 190.  Her applications were initially denied and that denial was upheld

upon reconsideration.  Tr. 56-76.  Plaintiff then made a request for a hearing by an Administrative

Law Judge ("ALJ").  An administrative hearing was held on April 17, 2009.  Tr. 17-55.  Plaintiff

was present and represented by counsel.

At this time, plaintiff was 45 years of age and possessed a high school education.  Tr. 20,

136.  She had past relevant work ("PRW") experience as a grocery checker and cashier II.  Tr. 51-

52, 68, 132, 148-151.

On September 17, 2009, the ALJ found that plaintiff's depression, status post cervical fusion, and status post carpal tunnel syndrome release of the bilateral upper extremities were severe, but did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.  Tr. 63-64.  After partially discrediting plaintiff's subjective complaints, the ALJ determined that plaintiff retained the residual functional capacity ("RFC") to perform light work involving only frequent handling, fingering, and grasping with the right upper extremity; occasional handling, fingering, and grasping with the left upper extremity; occasional climbing, balancing, stooping, kneeling, crouching, and crawling; and, involving only incidental interaction with others consistent with the work performed.  Tr. 64-68. With the assistance of a vocational expert, the ALJ found plaintiff could perform work as a housekeeper and machine tenderer.  Tr. 68-69.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on May 22, 2010.[1]  Tr. 1-4.  Subsequently, plaintiff filed this action.  ECF No. 1.  This case is before the undersigned by consent of the parties.  Both parties have filed appeal briefs, and the case is now ready for decision.  ECF No. 10, 12.  Plaintiff has also filed a motion to introduce new and additional medical evidence, and the Administration has responded.  ECF No. 11, 13.

## II.    **Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind

---

[1]On September 30, 2009, while Plaintiff was awaiting the ruling of the Appeals Council, she filed a second application for DIB alleging the same onset date alleged in this case.  Following a hearing before another ALJ, Plaintiff was granted benefits as of September 15, 2009.  We note that September 15, 2009, should actually be September 18, 2009, as the ALJ clearly indicated his intent for his decision to be effective the day after the issuance of the ALJ's opinion in this case.

AO72A
(Rev. 8/82)

would find it adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it.  *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently.  *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § § 423(d)(3), 1382(3)(c).  A plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits:  (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past

relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III.   **Evidence Presented**:

Records dated prior to Plaintiff's alleged onset date indicate that she was treated for epigastric pain, symptomatic IBS triggered by stress, constipation, carpal tunnel syndrome in the left wrist, agitated depression, chronic sinusitis, allergic rhinitis, bipolar disorder, gastroesophageal reflux disease, urinary leakage, renal lithiasis, urinary tract infections, eustachian tube dysfunction, cervical degenerative disk disease, premenstrual syndrome, migraine headaches, fatigue, abdominal pain, back pain, and an ovarian cyst, . Tr. 249-268, 299, 313-316, 361-414. A renal sonography conducted in December 2006 was negative. Tr. 297.

A nerve conduction study of her left wrist performed on February 8, 2006, was normal showing no evidence to suggest entrapment neuropathy or carpal tunnel syndrome. Tr. 401.

On October 31, 2006, Plaintiff was treated in the emergency room following a suicide attempt. Tr. 305-311. She had apparently awoke during the night and slit her wrists, after consuming alcohol the night before. Dr. Wayne Enns noted that Plaintiff had been seeing him for approximately seven years and had been volatile at times. He strongly suspected she suffered from bipolar disorder, and diagnosed her with probable immature personality disorder. Dr. Enns also referred her to Vista Health for evaluation and indicated he would continue following her. Tr. 305-311.

4

On November 12, 2007, Plaintiff underwent a mental diagnostic evaluation with Dr. Don Ott. Tr. 203-209. Plaintiff reported suffering from depression since childhood, stating she had been diagnosed with bipolar disorder in 2003. She reportedly began taking antidepressants in her late twenties and was hospitalized in 2001 for depression, but had received no outpatient psychotherapy. Two suicide attempts were reported, one in 2002 and one in 2006. Plaintiff stated that she had slashed her wrists on both occasions. She described her most recent mood as angry and depressed, stating that she tended to overreact and became agitated easily.

Plaintiff stated that she had been fired from her job with Wal-Mart in March 2007 due to excessive absences. She alleged apprehension of others as her reason for not attending work. Dr. Ott noted that she was pleasant and cooperative and was able to relate appropriately during the evaluation. There was no evidence of aggression or hostility. She looked rather sad and resigned with a minimal range of affect, but made satisfactory eye contact. No pressured speech, loosened associations, symptoms of a thought disorder, delusions, or hallucinations were observed. Her thoughts were rational, coherent, and goal-directed. She appeared alert and oriented in all three spheres with adequate memory recall. Dr. Ott found no overt evidence of an organic impairment, and noted that Plaintiff had reported no symptoms consistent with a manic episode during her interview. He diagnosed her with depressive disorder not otherwise specified and assessed her with a global assessment of functioning score of 50-60. Dr. Ott indicated that Plaintiff reported no significant problems getting along with others, though her current social interaction was reportedly limited. Her capacity to cope with the mental demands of work was adequate. He noted that she was able to perform her last job, but fabricated excuses

5

to miss work.  Dr. Ott found no specific limitations in the area of concentration.  She reported difficulty with memory, but no apparent memory problems were observed.  Tr. 203-209.

On January 8, 2008, Plaintiff underwent a general physical exam with Dr. Van Hoang. Tr. 231-237.  She reported a history of bipolar disorder, panic disorder, herniated cervical disks which led to a cervical laminectomy six years prior, bilateral carpal tunnel syndrome causing numb fingers in both hands with a weakened left hand grip, and irritable bowel syndrome.  An examination revealed a normal range of motion in all areas, no joint abnormalities, no deformities, no instabilities, no atrophy, and a stable gait and coordination.  Plaintiff did exhibit a slightly decreased grip strength of only 80% in her left hand.  It was noted that she had undergone successful carpal tunnel surgery on her right hand.  No evidence of psychosis was documented and Plaintiff was oriented in all three spheres.  Dr. Hoang diagnosed her with chronic neck pain, bilateral carpal tunnel syndrome, bipolar by history, and panic attacks.  He indicated that she would have moderate physical and mental limitations.  Tr. 231-237.

On January 21, 2008, Plaintiff reported a little more stomach pain since switching to Lamictal.  Tr. 331.  Dr. Enns explained this might be because the medication was new and she had not yet reached a therapeutic dosage.  She seemed comfortable with giving it a few weeks to work out.  Tr. 331.

On February 8, 2008, Plaintiff complained of burning in her pelvic area and urinary frequency.  Tr. 294, 415-417.  She was diagnosed with dysuria and a yeast infection, and prescribed Diflucan.  Tr. 294.

On February 22, 2008, Plaintiff indicated she had quit the Lamictal three days prior, due to its cost. Tr. 332-333.  She really liked it, stating that she had felt better on it than she had felt

AO72A
(Rev. 8/82)

in years, and requested a prescription for a generic form of this medication.  The Seroquel worked, too, but it caused weight gain.  The Prevacid, however, was not working, as she was experiencing more heartburn and indigestion.  Further, her left wrist continued to be numb due to carpal tunnel.  The right wrist had been fixed and was doing well.  Plaintiff also complained of continued pelvic symptoms, stating she had recently been to the ER and was given one pill. However, she continued to experience burning when she voided.  Dr. Enns diagnosed her with urethritis, bipolar, GERD, irritable bowel syndrome, previous iron-deficiency anemia, Depakote therapy, and left carpal tunnel syndrome.  Plaintiff asked if he would inject her wrist, and he agreed to do so.  He also prescribed Doxycycline, sent off her prescription for Lamictal, and scheduled her for a colonoscopy.  Tr. 332-333.

On November 21, 2008, Plaintiff continued to experience problems with her left wrist. Tr. 334-335.  The middle three fingers were now hurting all of the time.  She had reportedly been wearing her wrist brace most of the time for the last year and was taking Celebrex twice daily. Plaintiff also complained of boils under her right axilla.  The abscesses were noted to be superficial, more like infected hairs.  However, Dr. Enns cultured them to be certain.  An examination of her left wrist revealed positive Tinel and Phalen signs.  Plaintiff was diagnosed with left carpal tunnel and superficial abscesses of the right axilla.  Dr. Enns advised her to use Mennen Pre-Electric after shaving her armpits to kill the germs and seal the pores.  He also refilled her Celebrex, prescribed Bactroban ointment and Vibramycin, and scheduled her an appointment with Dr. Smith regarding carpal tunnel surgery.  Tr. 334-335.

On November 23, 2008, Plaintiff sought emergency treatment for left wrist pain.  Tr. 418-424.  Minimal acute findings were noted on exam, and there was no obvious evidence of an

AO72A
(Rev. 8/82)

injury.  Plaintiff reportedly had jammed her hand while moving furniture.   She was diagnosed with carpal tunnel syndrome and prescribe Ibuprofen.  Tr. 418-424.

On November 25, 2008, Plaintiff was evaluated by Dr. John Smith concerning possible carpal tunnel syndrome of the left wrist.  Tr. 337, 453.  He noted that she had previously undergone surgery for symptoms in her right wrist and had undergone cervical neck decompression and fusion surgery.  She obtained relief from the symptoms in her left wrist for a while after that via injections of Decadron, but the numbness returned.  At current, Plaintiff was experiencing numbness in the two middle fingers, but not the index finger or the thumb. She requested that Dr. Smith prescribe pain medication.  On examination, he noted that she was not sensitive to pressure or forced flexion.  Accordingly, Dr. Smith ordered an electromyography ("EMG").  While awaiting the results of this test, he advised her to stop using the brace she was wearing because it had a metal stay on it.  Tr. 337.

On December 3, 2008, Plaintiff was not able to get her nerve conduction tests done at Cooper Clinic because she owed them money and was not able to pay them "fast enough."  Tr. 338.  She phoned Dr. Enns office requesting pain medication, and asking that he attempt to arrange for the tests to be performed at another facility or perhaps just move forward with surgery.  Dr. Enns called in a prescription for Tramadol and advised her she could also take Tylenol. Tr. 338.

On December 30, 2008, Dr. Smith noted that Plaintiff's EMG showed moderate to severe left carpal tunnel syndrome.  Tr. 339, 354, 455-459.  He scheduled her for flexor retinaculum release the following week.  Tr. 339.

AO72A
(Rev. 8/82)

On January 13, 2009, Plaintiff underwent release of the flexor retinaculum in the left wrist.  Tr. 356, 429-453, 460.  She tolerated the procedure well.  Tr. 356.

On January 28, 2009, Plaintiff presented with a migraine headache.  Tr. 340.  She had run out of her migraine medication.  Dr. Enns administered Toradol and Phenergan injections and called in a prescription for Imitrex.  Tr. 340.

On October 7, 2009, Plaintiff was treated for bipolar disorder, migraines, previous iron deficiency anemia, dysuria, and intermittent post-hepetic neuralgia.  Tr. 481.  Records indicate she had stopped taking her Depakote because it made her feel "flat."  She reported worsened allergies, right ankle welling, occasional palpitations, some dysuria, decreased energy, and a little tingling in her right wrist.  A chest exam revealed some possible slightly decreased air entry with an area of pain on the right posterior chest just above the rib cage of her previous shingles.  Dr. Enns noted that an EKG for palpitations showed only premature ventricular contraction, but no change from her previous EKG.  He prescribed Flonase, Xanax, Maxalt, and a Lidocaine patch.  Tr. 481-482.

Between October 14, 2009, and January 13, 2010, Plaintiff was treated at Western Arkansas Counseling and Guidance Center on five occasions.  Tr. 497-508.  She indicated that her son had recently overdosed on prescription drugs and she was in the process of moving her mentally delayed daughter to a long-term residential care facility.  As a result, Plaintiff reported difficulty with anxiety, depression, poor boundaries, impulse control, loneliness, low self esteem, paranoia, and problems with sleep.  She was diagnosed with adjustment disorder with mixed anxiety and depressed mood and personality disorder not otherwise specified.  Michael Rowland, a counselor, assessed her with a GAF of 55 on October 14, 2009.  Her psychiatric medications

9

included Trazodone, Lexapro, Buspirone, Alprazolam, and Lamotrigine.  On November 4, 2009,

Plaintiff's thought processes were logical and coherent, her memory intact, her abstracting ability

normal, her insight good, her judgment good, her mood calm with an appropriate affect, her

speech quantity and quality normal, and her general behavioral tone cooperative.  Tr. 497-508.

On November 20, 2009, Plaintiff stated that she was doing "great" on the increased dose

of Lamictal, but complained of severe nocturnal hot flashes.  Tr. 492.  She had recently moved

into a building that did not have central heat and air.  Dr. Enns noted that Plaintiff's cervical

degenerative disk disease was doing better.  Her bipolar disorder had flared up due to her missing

her medication, but he indicated that she should do better now that her medication had been

reinstated.  Dr. Enns noted some vasomotor instability probably related to the change in the

weather and temperature.  He refilled her Xanax and increased her Buspar dosage to help with

stress.  Tr. 492.

On December 28, 2009, Plaintiff reported more problems with chest pain.  Tr. 493.  She

also had a slight cough and frequent pain in her upper abdomen that she felt was going into her

neck.  Plaintiff wondered if there was anything she could take in addition to the Prevacid.  She

was also continuing to have difficulty with arthritic pain in her back and neck.  An exam revealed

mild tenderness to palpation at the costochondral junction and tenderness in the epigastrum.  Dr.

Enns diagnosed her with possible gastritis or esophagitis, costochondritis, iron deficiency, and

abdominal pain with a negative H. Pylori.  He scheduled her for an EGD, refilled her

prescriptions, prescribed Tramadol and Celebrex, and advised her she could take Tylenol to

increase her medications effectiveness.  Tr. 493.

10

IV.   **Discussion**:

Plaintiff contends that the ALJ erred by disregarding medical and testimonial evidence reflecting her severe mental limitations and overestimating her RFC.  She also seeks to introduce new evidence in support of her claim of disability.  We will begin our analysis with a review of her alleged new evidence.

A.   **Motion to Introduce New Evidence**:

Reviewing courts have the authority to order the Commissioner to consider additional evidence but "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g);  *Woolf v. Shalala*, 3 F.3d 1210 (8th Cir. 1993); *Chandler v. Secretary of Health and Human Servs.,* 722 F.2d 369, 371 (8th Cir. 1983).  "To be material, new evidence must be non-cumulative, relevant, and probative of the claimant's condition for the time period for which benefits were denied, and there must be a reasonable likelihood that it would have changed the Commissioner's determination."  *Woolf,* 3 F.3d at 1215.

In her motion to introduce new evidence, Plaintiff indicates that she submitted additional medical evidence to the ALJ prior to her decision in this case and also submitted additional evidence to the Appeals Council after the ALJ rendered her decision.  Specifically, she submitted records dated prior to the relevant time period, as well as records dated after the ALJ had rendered her decision in this case.  We note, however, that all of these medical records have already been made a part of the record by both the ALJ and the Appeals Council.  They are contained in the record currently before this court.  As such, we must consider all of the medical records in evidence, including these records.  *See Browning v. Sullivan,* 958 F.2d 817, 822 (8th

AO72A
(Rev. 8/82)

Cir. 1992) (holding once it is clear the Appeals Council has reviewed the additional medical evidence, our role is limited to deciding whether the administrative law judge's determination is supported by substantial evidence on the record as a whole, including the new evidence submitted after the determination was made). Therefore, as far as this evidence is concerned, Plaintiff's motion to introduce new evidence is denied as moot. ECF No. 11.

Plaintiff also seeks to introduce a copy of the ALJ's opinion regarding her second application, wherein she was awarded benefits beginning September 18, 2009. She claims that this opinion supports her stance that she was disabled as of the onset date she alleged in the application presently before the court. Although the ALJ's opinion may constitute new evidence, it is certainly not material evidence of Plaintiff's disability during the time period relevant to the current application. *See Woolf* at 1215 (holding "[t]o be material, new evidence must be non-cumulative, relevant, and probative of the claimant's condition for the time period for which benefits were denied, and there must be a reasonable likelihood that it would have changed the Commissioner's determination."). A review of the ALJ's decision clearly indicates that it refers only to Plaintiff's condition as of the day after the ALJ's opinion in the present case. It is also reliant upon medical evidence not relevant to or made a part of the record in the current case. Accordingly, Plaintiff's motion to introduce new evidence is also denied with regard to the second ALJ's decision.[2]  ECF No. 11.

---

[2]A motion to introduce new evidence is not the proper way to advise the court of an ALJ's decision on a supplemental application. This can be accomplished by simply filing a supplemental appeal brief apprising the court of the new decision and any pertinent information therein.

**B.**      **Evidence dated prior to the relevant time period:**

Plaintiff also contends that the ALJ disregarded medical and testimonial evidence reflecting her severe mental limitations.   Specifically, she contends that the ALJ failed to consider the 2002 records from Harbor View Mercy Hospital and the 2006 Vista Health records documenting her suicide attempts.[3]  We note, however, that Plaintiff's alleged onset date was July 11, 2007.   The regulations clearly state that "the date alleged by the individual should be used [as the date of onset] if it is consistent with all the evidence available."   Social Security Ruling 83-20; *Karlix v. Barnhart*, 457 F.3d 742, 747 (8th Cir. 2006).   Here, records indicate that Plaintiff worked at Wal-Mart until July 2007.   Tr. 202.   She and her attorney both agreed that her onset date should be amended to July 11, 2007, due to her work history.   And, the ALJ did review and acknowledge her 2006 hospitalization.   It does not appear that the ALJ mentioned Plaintiff's 2002 suicide attempt in her opinion, but we do not find this to be error as this was approximately five years prior to Plaintiff's alleged onset date with no records to document an ongoing treatment regimen.   Further, as previously noted, Plaintiff remained able to work until July 2007, evidencing that she was not disabled at this time.

We also note that the mere fact that sporadic medical records exist prior to Plaintiff's alleged onset date does not obligate the ALJ to amend the onset date and consider those records. *See id.* (holding by itself, any impairment alleged must still meet the duration requirement for

---

[3]The records at issue were reviewed by this court.   They indicate that Plaintiff was treated for slashing her wrists in both October 2002 and November 2006.  Tr. 258, 305-311, 465-477).   It appears that alcohol was involved in both incidents and Plaintiff even refused admission following her 2006 suicide attempt.  Records dated after July 2006 simply do not indicate an ongoing pattern of treatment for a significant mental disorder.  She sought out no mental health treatment.  Tr. 248, 332-340, 356, 430-451, 481-482.   As has been recognized by the Eighth Circuit, it is Plaintiff's burden to prove her disability, and as such she had the responsibility for presenting the strongest case possible. *Thomas v. Sullivan*, 928 F.2d 255, 260 (8th Cir. 1991).   Plaintiff simply did not provide sufficient evidence to the ALJ to meet her burden of proof.

the Act's definition of disabled).  Considering Plaintiff's work records, coupled with the fact that she amended her onset date to July 11, 2007, as well as the ALJ's determination that she was not particularly credible, we find the evidence to be unambiguous concerning Plaintiff's onset date. Tr. 199.  Thus, the ALJ did not err in failing to give these predated records significant weight.

### C.    Subjective Complaints/Severity of Impairments:

We next evaluate Plaintiff's subjective complaints.  When evaluating the credibility of plaintiff's subjective complaints the ALJ is required to make an express credibility determination detailing his reasons for discrediting the testimony. *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001).

The standard of evaluation is not whether plaintiff experiences pain, but if the pain alleged is intense enough to cause functional limitations. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (holding that the real issue is not whether the plaintiff is experiencing pain, but how severe and whether it prevents him from performing any kind of work).

An ALJ may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them.  *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).  The ALJ is required to take into account the following factors in evaluating the credibility of a claimant's subjective complaints: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions.  *See id.* The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints.  *Masterson v. Barnhart,* 363 F.3d 731, 738 (8th Cir.2004). However, the ALJ need not explicitly discuss each *Polaski* factor.

14

*Strongson v. Barnhart,* 361 F.3d 1066, 1072 (8th Cir.2004).  The ALJ only need acknowledge and consider those factors before discounting a claimant's subjective complaints.  *Id.*  Even so, the ALJ may discount a claimant's subjective complaints if there are inconsistencies between the alleged impairments and the evidence as a whole.  *Dunahoo v. Apfel*, 241 F.3d 1033, 1037 (8th Cir. 2001); *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001).

      1.    <u>**Mental Limitations**</u>:

      As previously discussed, Plaintiff has alleged disability due to bipolar disorder, depression, and anxiety.  However, she relies on records dated prior to and after her alleged onset date to establish her disability.  We note that Plaintiff failed to seek out any mental health treatment for her condition during the relevant time period.  *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (holding that the lack of formal treatment by a psychiatrist, psychologist, or other mental health professional is a significant consideration when evaluating Plaintiff's allegations of disability due to a mental impairment).  It does appear that she was being treated for these impairments via medication prescribed by her general doctor.  *See Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling.").  There are no records to indicate that Plaintiff made consistent complaints regarding her symptoms.  *See Edwards v. Barnhart*, 314 F.3d at 967 (holding that ALJ may discount disability claimant's subjective complaints of pain based on the claimant's failure to pursue regular medical treatment).  Further, she was not always compliant with her medication. Tr. 332-333. *See Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) ("A failure to follow a recommended course of treatment . . . weighs against a claimant's credibility.").

15

We also note Dr. Ott's consultative evaluation wherein he found no overt evidence of an organic impairment, and noted that Plaintiff had reported no symptoms consistent with a manic episode during her interview. He diagnosed her with depressive disorder not otherwise specified and assessed her with a global assessment of functioning score of 50-60, which is indicative of only moderate symptoms. Dr. Ott noted that her capacity to cope with the mental demands of work was adequate and that she was actually able to perform her last job. However, he indicated that she fabricated excuses to miss work. Dr. Ott also found no specific limitations in the area of concentration, persistence, or pace, and could find no apparent memory problems, although memory loss was alleged. Tr. 203-209. Accordingly, although we do agree that Plaintiff's mental impairments were severe, we can not say they were significant enough to prevent her from performing all work related activities.

### 2.    Physical Limitations:

Plaintiff was also treated for carpal tunnel syndrome, neck problems, IBS, migraine headaches, and kidney stones. In 1996, she underwent carpal tunnel release surgery on her right hand, which appears to have been successful. Plaintiff began experiencing neck pain with right arm radiculopathy in 2000. An MRI performed in January 2001 revealed disk degeneration as well as posterior spurring and spondylosis primarily at the C5-6 and C6-7 levels. Plaintiff underwent an anterior cervical discectomy with fusion in February 2001. Records reveal she did well following surgery. In October 2006, she began complaining of chronic neck pain and was diagnosed with cervical degenerative joint disease and treated conservatively. *See Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993) (holding that treating physician's conservative treatment was inconsistent with plaintiff's allegations of disabling pain).

16

Plaintiff first complained of left wrist pain and tingling in March 2006, at which time nerve conduction studies were normal. Plaintiff was referred to Dr. Smith for steroid injections. In April and May 2007, Plaintiff again voiced complaints of wrist pain and a second EMG showed moderate to severe carpal tunnel syndrome. She then underwent carpal tunnel release surgery on her left wrist on January 13, 2009. The only examination of record was conducted by Dr. Hoang in January 2008. At this time, Plaintiff had a full range of motion in all areas, no joint abnormalities, no deformities, no instabilities, no atrophy, and a stable gait and coordination. She did exhibit a slightly decreased grip strength of only 80% in her left hand. However, we find this to be consistent with the ALJ's conclusion that Plaintiff was limited to only occasional use of her left wrist.

Records also indicate that Plaintiff was treated for IBS with chronic diarrhea in May 2002. Dr. Enns attributed this to left-sided ulcerative colitis and treated it with medication. She did not seek additional treatment for this condition until May 2007 and then again in January 2008, after she had begun taking Lamictal. *See Edwards v. Barnhart*, 314 F.3d at 967. As this does not seem to be a chronic and ongoing problem that interfered with her ability to perform work-related activities, we agree with the ALJ's conclusion that this condition was not severe.

Further, we note that Plaintiff was treated via prescription medication for migraine headaches, and was treated for kidney stones on one occasion in December 2006. However, the frequency of her treatment for headaches and kidney stones does not appear to have risen to a level that would have interfered with her ability to perform work-related activities. *See Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (holding that if the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement

17

of step two).  Accordingly, we can not say the ALJ erred in concluding that these impairments were not severe.

### 3.     **Activities of Daily Living:**

Plaintiff's own reports concerning her daily activities also undermine her claim of disability.  On an adult function report dated November 5, 2007, Plaintiff indicated that she cleaned house, slept, cooked (sometimes), watched television, and played computer games all day.  Tr. 140.  She also reported the ability to care for her personal hygiene, prepare her own meals daily, do the laundry, perform household repairs, iron, mow, walk, drive a car, shop in stores for groceries and household items, count change, do crafts, work in the flower bed, and garden.  Tr. 140-144.  *See Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (ability to care for one child, occasionally drive, and sometimes go to the store); *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996) (ability to visit neighbors, cook, do laundry, and attend church); *Novotny v. Chater*, 72 F.3d at 671 (ability to carry out garbage, carry grocery bags, and drive); *Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994) (claimant's ability to read, watch television, and drive indicated his pain did not interfere with his ability to concentrate); *Woolf v. Shalala*, 3 F.3d 1210, 1213-1214 (8th Cir. 1993) (ability to live alone, drive, grocery shop, and perform housework with some help from a neighbor).  We also note that she reported no significant problems getting along with others, though her current social interaction was reportedly limited. We find these activities to be inconsistent with a finding of disability.

### B.     **The ALJ's RFC Assessment:**

Plaintiff contends that the ALJ's RFC assessment is not supported by substantial evidence because she overestimated Plaintiff's abilities.  RFC is the most a person can do despite

that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or his RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir.2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or his limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

The ALJ properly considered plaintiff's subjective complaints, the objective medical evidence, and the RFC assessments of the non-examining, consultative doctors. She then found plaintiff could perform light work involving only frequent handling, fingering, and grasping with the right upper extremity; occasional handling, fingering, and grasping with the left upper extremity; occasional climbing, balancing, stooping, kneeling, crouching, and crawling; and, involving only incidental interaction with others consistent with the work performed. Tr. 64-68.

On December 15, 2007, Dr. Jerry Henderson completed a psychiatric review technique form and a mental RFC assessment. Tr. 211-230. After reviewing Plaintiff's medical records, he diagnosed her with depressive disorder not otherwise specified. He noted moderate limitations with regard to carrying out detailed instructions, maintaining attention and

19

concentration for extended periods, sustaining an ordinary routine without special supervision, working in coordination with or proximity to others without being unduly distracted by them, completing a normal workday and work week without interruptions from psychologically based symptoms, performing at a consistent pace without an unreasonable number and length of rest periods, and accepting instructions and responding appropriately to criticism from supervisors. Dr. Henderson also noted that Plaintiff could perform work where the interpersonal contact was routine but superficial, the tasks were learned by experience with several variables, the judgment required was within limits, and the supervision required was routine but detailed for non-routine, semiskilled tasks.  No episodes of decompensation were noted.  Tr. 211-230.

On January 9, 2008, Dr. Ronald Crow completed a physical RFC assessment of Plaintiff. Tr. 240-247.  He reviewed Plaintiff's medical records and concluded that she could perform light work.  Tr. 240-247.

On April 23, 2008, Dr. Jim Takach completed yet another physical RFC assessment.  Tr. 322-329.  After reviewing her medical records, he concluded Plaintiff could perform light work requiring no rapid repetitive flexion or extension of the left wrist.  He also noted that she could only occasionally climb, balance, stoop, kneel, crouch, and crawl.  Tr. 322-329.

After reviewing the entire medical record, we conclude that substantial evidence supports the ALJ's RFC assessment.  As previously noted, Plaintiff did not seek out consistent medical treatment for her mental impairments during the relevant time period.  Further, it appears that her neck problem was treated conservatively, surgery performed on her right wrist prior to the relevant time period appears to have rectified the problems with her right wrist, and plaintiff ultimately underwent surgery to correct carpal tunnel syndrome in her left wrist.  The only

20

examination of record revealed no range of motion limitations or restrictions, aside from a slightly decreased grip strength in the left hand.  As we can find no indication in the record that any of her treating doctors limited her physical activities or found her impairments to be disabling, the ALJ's RFC will stand.  *See Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (none of the claimant's treating physicians opined the claimant was so impaired or disabled that the claimant could not work at any job).

### C.   Vocational Expert's Testimony:

Testimony from a vocational expert based on a properly-phrased hypothetical question constitutes substantial evidence.  *See Cruze v. Chater,* 85 F.3d 1320, 1323 (8th Cir. 1996); *cf. Hinchey v. Shalala,* 29 F.3d 428, 432 (8th Cir. 1994) (when hypothetical question does not encompass all relevant impairments, VE's testimony does not constitute substantial evidence to support the ALJ's decision). The ALJ's hypothetical question needs to "include only those impairments that the ALJ finds are substantially supported by the record as a whole." *Id.* (citing *Stout v. Shalala,* 988 F.2d 853, 855 (8th Cir.1993)); *see also Morse v. Shalala,* 32 F.3d 1228, 1230 (8th Cir.1994).

The vocational expert testified that a person of plaintiff's age, education, and work background with the above RFC, could still perform work as a housekeeper and machine tenderer.  Tr. 53-55.  We find substantial evidence to support the ALJ's determination that plaintiff could perform these jobs.

### V.   Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits, and thus the decision

21

should be affirmed.  The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

DATED this 26th day of May 2011.


/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

22